[Cite as *In re D.P.* , 2012-Ohio-3478.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| D.P., K.T., and S.P., | : | Case No. 11CA30 & 31 |
| | : | |
| | : | **Released: July 24, 2012** |
| | : | |
| Adjudicated Dependent | : | <u>DECISION AND JUDGMENT</u> |
| Children. | : | <u>ENTRY</u> |

_____

APPEARANCES:

Kenneth E. Ryan, Eslocker & Oremus Co., L.P.A., Athens, Ohio, for
Appellant-Mother, Sarah Perkins.

Richard H. Hedges, Athens, Ohio, for Appellant-Father, Lamar
Quartermaine, Jr.[1]

Keller J. Blackburn, Athens County Prosecuting Attorney, and Sabrina J.
Ennis, Athens County Assistant Prosecuting Attorney, Athens, Ohio, for
Plaintiff-Appellee, Athens County Children's Services.

_____

McFarland, J.

{¶1} Appellant-Mother, Sarah Perkins, and Appellant-Father, Lamar

Quartermaine, Jr., appeal from the Juvenile Division of the Athens County

---

[1] Lamar Quartermaine is the father of D.P. only. The father of K.T., Matthew Thomas, has not appealed
the termination of his parental rights and responsibilities. The father of S.P. is unknown. The children,
who were appointed counsel below, have not appealed the termination of their parents' rights and
responsibilities.

Common Pleas Court's decision and judgment entry terminating their parental rights and responsibilities and placing D.P., K.T., and S.P. in the permanent custody of Athens County Children's Services, (hereinafter "ACCS"). Appellant-Mother, (hereinafter "Perkins") raises a single assignment of error, contending that ACCS failed to prove by clear and convincing evidence that permanent custody was in the children's best interests and that the children cannot be reunified with their mother. Appellant-Father, (hereinafter "Quartermaine"), raises two assignments of error, contending that 1) the trial court committed reversible error by accepting an agreed dependency adjudication from the biological father despite the fact that father had not had the benefit of legal counsel; and 2) the court committed reversible error by granting permanent custody of the child [D.P.] to ACCS despite progress by the father and the absence of clear and convincing evidence that father could not assist the child at least equally as foster placement in view of the child's behavioral difficulties.

{¶2} Because we fail to find merit in any of Appellants' assigned errors, and because we find that the trial court's determination that a grant of permanent custody was in the best interests of the child is supported by competent credible evidence, we affirm the decision of the trial court.

FACTS

{¶3} Perkins and Quartermaine share one child, D.P. Perkins is also mother to K.T., whose father is Matthew Thomas, and S.P., whose father is unknown. Perkins, during a time when she was living alone, without Quartermaine, initiated voluntary services with ACCS. After receiving services for about six months, all three children were removed from Perkins' care, were placed in the temporary custody of ACCS, and were placed in foster care. Perkins stipulated to the dependency of the children at a hearing on January 5, 2010. Although Quartermaine received the requisite notice, he failed to appear at the hearing. At that time, a case plan was put into place as between the children and Perkins, and it was noted on the record that if the fathers of the children wished to participate in the case plan, they would need to contact ACCS. On February 8, 2010, the trial court filed a judgment entry adjudicating all of the children dependent and awarding temporary custody of the children to ACCS. Quartermaine did not appeal from this determination.

{¶4} At some point, Quartermaine moved back in with Perkins and was added to the case plan. Although Matthew Thomas was added to the case plan, his participation eventually ceased and he was removed. Although numerous services were provided in the form of therapies,

mentoring and supervised visitation, Quartermaine and Perkins were never able to progress to unsupervised visits with the children. This was in part due to the parties' numerous mental health diagnoses, coupled with the children's severe behavioral problems. Another barrier that remained was Perkins' and Quartermaine's apparent inability to safely supervise all three children at one time. The record reveals that Perkins suffers from major depression, post traumatic stress disorder, borderline personality disorder, and has been convicted of several felonies, both prior to and during her involvement with ACCS. Quartermaine suffers from major depressive disorder, anxiety, impulse control disorder, avoidance disorder and anger. Likewise, the children suffer from severe behavioral issues, and D.P. and K.T., in particular, exhibit sexually reactive behavior which indicates they have been the victim of sexual abuse.

{¶5} Despite the provision of numerous services by and through ACCS, including therapy, counseling, parent mentoring and supervised visitation, as indicated through our review of the numerous case plans and case plan amendments, as well as review hearing transcripts, ACCS filed a motion to modify the disposition to permanent custody on July 25, 2011. Hearings on the permanent custody motion were held on October 31 and November 1, 2011. As part of the permanent custody hearing, the trial court

considered the report of the guardian ad litem, which supported an award of permanent custody of the children to ACCS. The trial court entered a decision with findings of fact and conclusions of law on November 16, 2011. That entry terminated Perkins' and Quartermaine's rights with respect to the children, and granted ACCS's motion for permanent custody. It is from this decision that Perkins and Quartermaine now bring their timely appeals, which we have consolidated, assigning the following errors for our review.

### PERKINS' ASSIGNMENT OF ERROR

"I.     ATHENS COUNTY CHILDREN SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE CHILDREN'S BEST INTEREST AND THAT THE CHILDREN CANNOT BE REUNIFIED WITH THEIR MOTHER."

### QUARTERMAINE'S ASSIGNMENTS OF ERROR

"I.     THE COURT COMMITTED REVERSIBLE ERROR BY ACCEPTING AN AGREED DEPENDENCY ADJUDICATION FROM THE BIOLOGICAL FATHER DESPITE THE FACT THAT FATHER HAD NOT HAD THE BENEFIT OF LEGAL COUNSEL.

II.     THE COURT COMMITTED REVERSIBLE ERROR BY GRANTING PERMANENT CUSTODY OF THE CHILD TO THE ATHENS COUNTY CHILDREN'S SERVICES AGENCY (ACCS) DESPITE PROGRESS BY THE FATHER AND THE ABSENCE OF CLEAR AND CONVINCING EVIDENCE THAT FATHER COULD NOT ASSIST THE CHILD AT LEAST EQUALLY AS FOSTER PLACEMENT IN VIEW OF THE CHILD'S BEHAVIORAL DIFFICULTIES."

QUARTERMAINE'S FIRST ASSIGNMENT OF ERROR

{¶6} We address Quartermaine's first assignment of error out of order for ease of analysis. In his first assignment of error, Quartermaine argues that the trial court erred when it entered the agreed adjudication of dependency, even though Quartermaine was not represented by counsel at the January 5, 2010, dependency hearing. The record indicates that Quartermaine had notice of the January 5, 2010 hearing, but he did not attend. The trial court appointed counsel for Quartermaine on January 7, 2010. On February 8, 2010, the trial court filed a judgment entry (1) that adjudicated all of the children in this case as dependent and (2) that awarded temporary custody of the children to Athens County Children's Services. Consequently, the February 8, 2010, entry was a final appealable order. *See In re A.S.*, 8th Dist. No. 94098 & 94104, 2010-Ohio-1441, ¶ 18; *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, ¶ 9.

{¶7} Quartermaine could have raised the argument from his first assignment of error in an appeal from the February 8, 2010, entry. Quartermaine, however, did not appeal the February 8, 2010, entry. As a result, Quartermaine's argument in his first assignment of error is untimely. *See In re Lander*, 12th Dist. No. CA 99-05-096, 2000 WL 819775, *1 (June 26, 2000) ("Appellant never appealed the juvenile court's May 16, 1997

judgment entry.  Having failed to timely appeal, appellant cannot raise in this appeal the issue of the dependency adjudication or the issue of appointment of counsel for her at the adjudicatory hearing.").  Accordingly, Quartermaine's first assignment of error is overruled.

## REMAINING ASSIGNMENTS OF ERROR

{¶8} We address Quartermaine's second and Perkins' sole assignment of error in conjunction with one another as they both essentially contend that the trial court erred in granting permanent custody of the children to ACCS. Accordingly, we set forth the standard of review and applicable principles in considering these arguments as follows.

## STANDARD OF REVIEW

{¶9} Generally, an appellate court will not reverse a trial court's permanent custody decision if some competent and credible evidence supports the judgment. *In re Perry*, 4th Dist. Nos. 06CA648 and 06CA649, 2006-Ohio-6128, at ¶ 40, citing *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). Thus, our review of a trial court's permanent custody decision is deferential. See *In re Hilyard*, 4th Dist. Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604, 05CA606, 05CA607, 05CA608, 05CA609, 2006-Ohio-1965, at ¶ 17. Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent

and credible evidence supporting the findings of fact and conclusion of law." *Schiebel* at 74. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984):

> "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); see, also, *In re Christian*, 4th Dist. No. 04CA10, 2004-Ohio-3146.

## STANDARD FOR GRANTING PERMANENT CUSTODY

{¶10} A trial court may not grant a permanent custody motion absent clear and convincing evidence to support the judgment. The Ohio Supreme Court defined "clear and convincing evidence" as:

"The measure or degree of proof that will produce in the mind

of the trier of fact a firm belief or conviction as to the

allegations sought to be established. It is intermediate, being

more than a mere preponderance, but not to the extent of such

certainty as required beyond a reasonable doubt as in criminal

cases. It does not mean clear and unequivocal." *In re Estate of*

*Haynes*, 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23 (1986); see,

also, *Schiebel* at 74.

In reviewing whether a trial court based its decision upon clear and

convincing evidence, "a reviewing court will examine the record to

determine whether the trier of facts had sufficient evidence before it to

satisfy the requisite degree of proof." *Schiebel* at 74.

## PERMANENT CUSTODY PRINCIPLES

{¶11} A parent has a "fundamental liberty interest" in the care,

custody, and management of his or her child and an "essential" and "basic

civil right" to raise his or her children. *Santosky v. Kramer*, 455 U.S. 745,

753, 102 S.Ct. 1388 (1982); *In re Murray*, 52 Ohio St.3d 155, 157, 556

N.E.2d 1169 (1990); see, also, *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-

1105, 862 N.E.2d 829. A parent's rights, however, are not absolute. See *D.A.*

at ¶ 11. Rather, " 'it is plain that the natural rights of a parent * * * are

always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.' " *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979) (quoting *In re R.J.C.* (Fla.App.1974), 300 So.2d 54, 58). Thus, the state may terminate parental rights when a child's best interest demands such termination. *D.A .* at ¶ 11.

{¶12} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C. 2151.414(A)(1). Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:

"(A) To provide for the care, protection, and mental and physical development of children * * *;

* * *

(B) To achieve the foregoing purpose[ ], whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety."

PERMANENT CUSTODY FRAMEWORK

{¶13} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:

> "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more

public children services agencies or private child placing

agencies for twelve or more months of a consecutive twenty-

two-month period, or the child has been in the temporary

custody of one or more public children services agencies or

private child placing agencies for twelve or more months of a

consecutive twenty-two-month period and, as described in

division (D)(1) of section 2151.413 of the Revised Code, the

child was previously in the temporary custody of an equivalent

agency in another state."

Thus, before a trial court may award a children services agency permanent

custody, it must find: (1) that one of the circumstances described in R.C.

2151.414(B)(1) applies; and (2) that awarding the children services agency

permanent custody would further the child's best interests.

{¶14} Pursuant to the plain language of R.C. 2151.414(B)(1)(d), when

a child has been in a children services agency's temporary custody for twelve

or more months of a consecutive twenty-two month period, a trial court need

not find that the child cannot or should not be placed with either parent

within a reasonable time. See, e.g., *In re T.F.*, 4th Dist. No. 07CA34, 2008-

Ohio-1238, at ¶ 23; *In re Williams*, 10th Dist. No. 02AP-924, 2002-Ohio-

7205; *In re Dyal* (Aug. 9, 2001), 4th Dist. No. 01CA11, 2001 WL 925379.

Consequently, when considering a R.C. 2151 .414(B)(1)(d) permanent

custody motion, the only other consideration becomes the child's best

interests. A trial court need not conduct an R.C. 2151.414(B)(1)(a) analysis

of whether the child cannot or should not be placed with either parent within

a reasonable time. *Dyal*; see, also, *In re Berkley*, 4th Dist. Nos. 04CA12,

04CA13, and 04CA14, 2004-Ohio-4797, at ¶ 61.

## BEST INTERESTS

{¶15} R.C. 2151.414(D) requires a trial court to consider specific

factors to determine whether a child's best interests will be served by

granting a children services agency permanent custody. The factors include:

(1) the interaction and interrelationship of the child with the child's parents,

siblings, relatives, foster parents and out-of-home providers, and any other

person who may significantly affect the child; (2) the wishes of the child, as

expressed directly by the child or through the child's guardian ad litem, with

due regard for the maturity of the child; (3) the custodial history of the child;

(4) the child's need for a legally secure permanent placement and whether

that type of placement can be achieved without a grant of permanent custody

to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7)

to (11) apply.

R.C. 2151.414(E)(7) to (11) provide as follows:

"(7) The parent has been convicted of or pleaded guilty to one of the following:

(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;

(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially

equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;

(d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."

{¶16} In the case at bar, we do not believe that the trial court erred when it applied the best interest factors and determined that they support awarding ACCS permanent custody of the children. As the court's decision notes, the children's' interactions and interrelationships are complex and generally unhealthy, and mental health issues are significant barriers to reunification.  D.P. is in his fifth foster home and requires a high level of supervision, and Perkin's relatives are alleged to have sexually abused the children.  According to the guardian ad litem, the children's wishes are not reliably ascertainable; however, the trial court considered the report of the guardian ad litem, which recommended a grant of permanent custody to ACCS.  With respect to custodial history, all three children were removed from the home on December 1, 2009, and have remained in foster care since that time.  The trial court further found that the children need and deserve a legally secure placement and that D.P. presents a particular challenge due to his safety issues, which may require him to be separated from his siblings. Additionally, both K.T. and S.P. were abandoned by their fathers.

{¶17} Further, and of importance, the trial court found that the children had been in the temporary custody of ACCS for twelve of twenty-two consecutive months and that ACCS had established reasonable efforts at reunification.  The court explained in its decision that although counsel for

the parents argued that substantial compliance with the case plan was demonstrated, in the court's view, the issues that caused removal and have since prevented return still remain substantial. Ultimately, the trial court stated that the parents have not and may not be able to remedy the issues that led to removal initially.

{¶18} Based upon these findings, which are supported by clear and convincing evidence contained in the record, the trial court determined that an award of permanent custody to ACCS was in the children's best interests. In light of the foregoing, after a thorough review of the record, we conclude that the trial court did not err by awarding ACCS permanent custody. Thus, Quartermaine's second and Perkins' sole assignment of error are overruled. Accordingly, the decision of the trial court is affirmed.

**JUDGMENT AFFIRMED**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellants costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, J. and Kline, J.: Concur in Judgment and Opinion.


For the Court,

BY:   _____
          Matthew W. McFarland, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**